# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Residential Asset Securitization Trust 2006-A3CB Mortgage Passthrough Certificates, Series 2006-C,

Plaintiff,

vs.

SFR INVESTMENTS POOL 1, LLC; ALIANTE MASTER ASSOCIATION; NEVADA ASSOCIATION SERVICES, INC.,

Defendants.

Case No.: 2:17-cv-02638-GMN-GWF

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 77), filed by Defendant Aliante Master Association ("HOA"). Plaintiff Deutsche Bank National Trust Company ("Plaintiff") filed a Response, (ECF No. 85), and HOA filed a Reply, (ECF No. 89).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 81), filed by Defendant SFR Investments Pool 1, LLC ("SFR"). Plaintiff filed a Response, (ECF No. 85), and SFR filed a Reply, (ECF No. 90).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 79). Defendants HOA and SFR each filed Responses, (ECF Nos. 86–87), and Plaintiff filed a Reply, (ECF No. 91).

Also pending before the Court is SFR's Motion for Default Judgment as to Cross-Claim Defendant Norman R. Flemens ("Borrower"), (ECF No. 78). Borrower did not file a response.

For the reasons discussed below, the Court **GRANTS** SFR and HOA's Motions for Summary Judgement. The Court **DENIES** Plaintiff's Motion for Summary Judgment. The Court **GRANTS** SFR's Motion for Default Judgment.

I.      **BACKGROUND**

This case arises from the non-judicial foreclosure sale of real property located at lot one hundred thirty-five (135) in block six (6) of Aliante parcel 12A phase 2 as shown in Plat Book 119, page 42 of plats in the Clark County Recorder's Office (the "Property"). (*See* Deed of Trust ("DOT"), Ex. 2 to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 80-1).  Borrower purchased the Property by way of a loan in the amount of $280,450.00, secured by a DOT recorded on December 27, 2005. (*Id.*)  The DOT identifies Meridias Capital, Inc. ("Meridias") as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee beneficiary for Meridias and Meridias's successors in interest. (*Id.*).  Plaintiff gained a beneficial interest in the DOT through an assignment recorded on November 8, 2018. (Assignment, Ex. 21 to Pl.'s MSJ, ECF No. 80-1).

On January 14, 2009, HOA, through its agent Nevada Association Services, Inc. ("NAS"), recorded a notice of lien against the property. (Notice of Lien, Ex. 3 to Pl.'s MSJ, ECF No. 80-1).  The notice indicated that Borrower had an outstanding balance of $1,950.00 on the DOT as of January 9, 2009. (*Id.*).  The notice of lien did not purport to include any delinquent assessments or nuisance abatement fees. (*See* Notice of Lien); (NAS Violations Only Statement, Ex. 4 to Pl.'s MSJ, ECF No. 79-1); (NAS Dep., Ex. 5 to Pl.'s MSJ, ECF No. 14:21–15:12, ECF No. 79-1).  NAS did not send the notice to MERS, and the notices sent to Meridias and Borrower were returned as undeliverable. (NOD Return Envelopes, Ex. 9 to Pl.'s MSJ, ECF No. 79-1).  On September 18, 2009, HOA, through NAS, mailed Borrower a notice of delinquent assessment lien that was not recorded, which noted that Borrower was delinquent on his common assessment fee payments. (*See* Notice of Delinquent Assessment Lien, Ex. B to SFR's Resp. to Pl.'s MSJ, ECF No. 87-2).  On November 20, 2009, NAS proceeded with foreclosure under the DOT by recording a notice of default and election to sell on behalf of HOA. (*See* Notice of Default, Ex. 6 to Pl.'s MSJ, ECF No. 80-1).  NAS then recorded two

1  notices of foreclosure sale, first on July 23, 2010 and later on February 20, 2013. (First Notice

2  of Sale, Ex. 10 to Pl.'s MSJ, ECF No. 80-1); (Second Notice of Sale, Ex. 15 to Pl.'s MSJ, ECF

3  No. 80-1).  On March 8, 2013, NAS sold the Property for $8,100.00 at the foreclosure sale, and

4  it conveyed the Property to SFR by a foreclosure deed recorded on March 15, 2013.

5  (Foreclosure Deed, Ex. 18 to Pl.'s MSJ, ECF No. 80-1).

6        Plaintiff commenced this action by filing the Complaint on October 11, 2017, primarily

7  seeking a declaration that its DOT continues to encumber the Property. (Compl. 19:23–20:2,

8  ECF No. 1).  In the alternative, Plaintiff requests either that the sale be set aside or an award of

9  damages. (*Id.* 20:6–8, 20:21–24).

10  **II.    LEGAL STANDARD**

11        **A.    Summary Judgment**

12        The Federal Rules of Civil Procedure provide for summary adjudication when the

13  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

14  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

15  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

16  may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

17  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

18  return a verdict for the nonmoving party. *Id.*  "Summary judgment is inappropriate if

19  reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

20  in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

21  Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

22  principal purpose of summary judgment is "to isolate and dispose of factually unsupported

23  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

24        In determining summary judgment, a court applies a burden-shifting analysis.  "When

25  the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  The

1   evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in

2   his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not

3   significantly probative, summary judgment may be granted. *Id.* at 249–50.

4        **B.**    **Default Judgment**

5        Obtaining a default judgment is a two-step process governed by Rule 55 of the Federal

6   Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, the

7   moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a).  Then,

8   after the clerk of court enters default, a party must separately seek entry of default judgment

9   from the court in accordance with Rule 55(b).  Upon entry of clerk's default, the court takes the

10  factual allegations in the complaint as true.

11       In determining whether to grant default judgment, courts are guided by the following

12  seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

13  substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

14  action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

15  due to excusable neglect; and (7) the strong public policy favoring decisions on the merits.

16  *Eitel*, 782 F.2d at 1471–72.

17  **III.**   **<u>DISCUSSION</u>**

18       Plaintiff seeks summary judgment on its claims for quiet title and declaratory relief,

19  arguing that HOA's failure to provide statutorily required notice of foreclosure to Meridias,

20  MERS, and Borrower renders the sale void. (Pl.'s Mot. Summ. J. ("MSJ") 6:18–11:14, ECF

21  No. 79).  Additionally, Plaintiff argues that the notice defects render the sale void by violating

22  Plaintiff's due process rights. (*Id.* 11:15–12:10).  Plaintiff also argues that the foreclosure sale

23  did not extinguish the DOT because HOA did not validly foreclose on any amounts owed under

24  the superpriority portion of HOA's lien. (*Id.* 12:11–13:16).  Alternatively, if its DOT did not

25

survive the sale, Plaintiff argues that the Court should set aside the sale in equity. (*Id.* 13:17–18:25).

SFR argues that the Court should grant summary judgment on SFR's counterclaim for declaratory relief that the sale extinguished Plaintiff's DOT because: (1) Plaintiff's claims are time-barred; (2) Plaintiff had constitutionally sufficient notice of sale; and (3) the foreclosure sale was valid and therefore extinguished the junior DOT. (SFR's MSJ 8:1–12:23, ECF No. 81).

HOA seeks summary judgment against Plaintiff's claims, arguing: (1) Plaintiff had constitutionally sufficient notice; (2) Plaintiff's quiet title claims are foreclosed by the HOA's CC&Rs; and (3) there was no contract between Plaintiff and HOA that provides Plaintiff an action for either breach of contract or breach of the implied covenant of good faith and fair dealing against HOA. (HOA's MSJ 5:3–8:11, ECF No. 77).

### C.    Statute of Limitations

The Court first addresses SFR's statute of limitations argument, because, if it is correct that Plaintiff's claims are time-barred by the three-year limitations period under NRS 11.190 or four-year limitations period under NRS 11.220, the Court need not proceed.  The Court, having previously addressed this issue in similar matters, concludes that Plaintiff's quiet title claim is not time-barred.

The Court finds that Plaintiff's quiet title claim is governed by the five-year limitations period set forth in NRS 11.070, which applies to a "cause of action or defense to an action, founded upon title to real property." Nev. Rev. Stat. 11.070.  A quiet title claim is reciprocal in nature as it "requests a judicial determination of all adverse claims to disputed property." *Del Webb Conservation Holding Corp. v. Tolman*, 44 F. Supp. 2d 1105, 1110 (D. Nev. 1999) (citing *Clay v. Scheeline Banking & Trust Co.*, 159 P. 1081, 1082–83 (Nev. 1916)).

The adverse claims here are between Plaintiff, a lienholder, and SFR, a titleholder.  The essence of Plaintiff's requested relief (a declaration as to the viability of the deed of trust) is necessarily a challenge to SFR's interest. *See Clay*, 159 P. at 1082 ("[O]ne of the essentials of a good complaint in such an action is that [the plaintiff] must show that the defendants claim an interest in the property adverse to the plaintiffs.").  Indeed, should Plaintiff obtain its requested remedy of invalidating the foreclosure sale, SFR would be divested of its title.  Because the Court must adjudicate the competing interests here, including the asserted title interest, the action is founded upon title.[1]

For claims that arise from the non-judicial foreclosure of real property, the statute of limitations begins to accrue at the time of the foreclosure sale. *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (2017); *US Bank N.A. v. BDJ Invs., LLC*, No. 2-16-cv-00866-GMN-PAL, 2018 U.S. Dist. LEXIS 168657, 2018 WL 4705525, at *2 (D. Nev. Sept. 29, 2018); *Bank of Am., N.A. v. Antelope Homeowners' Ass'n*, No. 2:16-cv-00449-JCM-PAL, 2017 U.S. Dist. LEXIS 13092, 2017 WL 421652, at *3 (D. Nev. Jan. 30, 2017).  Because the Complaint in this action was filed less than five years after the March 8, 2013 foreclosure sale, Plaintiff's quiet title claim is timely. (*See* Compl., ECF No. 1) (filed October 11, 2017).

//

//

---

[1] The Nevada Supreme Court has yet to weigh in on which limitations period applies to a lienholder's quiet title claim.  Consequently, there is an intra-District split as to whether lienholders have four or five years to bring quiet title actions.  To the extent there is any ambiguity as to NRS 11.070, the Court finds application of that statute's longer limitations period aligns with Ninth Circuit's guidance on conflicting statutes of limitations. *See Fed. Deposit Ins. Corp. v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1307 (9th Cir. 1989) ("[W]hen there is a 'substantial question' which of two conflicting statutes of limitations to apply, the court should apply the longer.") (quoting *Guam Scottish Rite Bodies v. Flores*, 486 F.2d 748, 750 (9th Cir. 1973) (applying longer statute of limitations when a claim had features of both an action in trespass and an action in ejectment)).

1

#### D.    HOA's Lien Status

The Court next addresses Plaintiff's argument that any superpriority portion of HOA's lien was extinguished because HOA's recorded notice of lien did not include any superpriority amount, and the foreclosure sale occurred more than three years after any superpriority portion became due.  The Court concludes that HOA validly foreclosed on its superpriority lien because Borrower was delinquent on his common assessment fees at the time NAS mailed him the notice of delinquent assessment lien.

NRS Chapter 116 establishes a split-lien scheme in favor of HOAs. *See* NRS 116 *et seq*. The statute provides that the totality of an HOA's lien comprises: "any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, [and] any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due." NRS 116.3116(1).  Although a first DOT is generally senior to an HOA's lien, the portion of an HOA's lien consisting of maintenance fees, nuisance abatement fees, and common assessment fees "which would have become due in the absence of acceleration during the nine months immediately preceding institution of an action to enforce the lien" are senior to a first DOT. *See* NRS 116.3116 (2)(b) and (3) (2009).  To avail itself of a superpriority lien, an HOA must provide a notice of delinquent assessment lien that, "states the amount of assessments and other sums which are due in accordance with subsection 1 of NRS 116.3116 . . . ." NRS 116.31162(1)(a).  The superpriority lien is extinguished by statute unless, "proceedings to enforce the lien are instituted, within 3 years after the full amount of the assessments becomes due." NRS 116.3116(5) (2009); *see also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JP Morgan Chase Bank, N.A.* ("*Gray Eagle*"), 388 P.3d 226, 231 (Nev. 2017).  Mailing the notice of delinquent assessment lien to the borrower marks the beginning of proceedings to enforce the lien. *Gray Eagle*, 388 P.3d at 232.

1    Plaintiff argues that the notice of lien did not include amounts encompassed within the

2 HOA's superpriority lien because the statement NAS sent with the notice only shows

3 Borrower's debt for violation fees and related collection costs. (Pl.'s MSJ ¶¶ 4–5, 12:11–

4 13:16); (Violations Only Statement, Ex. 4 to Pl.'s MSJ, ECF No. 79-1).  HOA responds that

5 Plaintiff's argument cherry-picks a favorable ledger, but a ledger provided eleven months after

6 HOA mailed the notice of delinquent assessment lien indicates that there are 17 months of

7 delinquent assessments, and, as a result, there is no dispute of material fact that Borrower was

8 delinquent on his common assessment fees at the time the notice of lien was filed. (HOA's

9 Resp. to Pl.'s MSJ 6:15–24, ECF No. 86); (Nov. 18, 2009 Ledger, Ex. A. to HOA's Resp. to

10 Pl.'s MSJ, ECF No. 86-1).  SFR also argues that HOA properly commenced foreclosure

11 proceedings on the superpriority amount of its lien when it mailed Borrower a notice of

12 delinquent assessment lien in September of 2009. (SFR's Resp. to Pl.'s MSJ, 6:13–7:6); (Sept.

13 18, 2009 NAS Letter, Ex. B to SFR's Resp. to Pl.'s MSJ, Bates No. Deutsche 0189, ECF No.

14 87-2); (*see also* Oct. 1, 2009 NAS Letter, Ex. B to SFR's Resp. Pl.'s MSJ, Bates No. Deutsche

15 0283, ECF No. 87-2).

16    Here, the ledger associated with the recorded notice of lien does not indicate any

17 outstanding delinquent assessments.  However, that is not sufficient to create a dispute of fact

18 regarding whether HOA validly foreclosed on the superpriority portion of its lien.  SFR

19 provides uncontroverted evidence that HOA mailed a notice of delinquent assessments to

20 Borrower that indicated Borrower was delinquent on his common assessment fees. (Sept. 18,

21 2009 NAS Letter, Ex. B to SFR's Resp., Bates No. Deutsche 0189, ECF No. 87-2); (*see also*

22 Oct. 1, 2009 NAS Letter, Ex. B to SFR's Resp., Bates No. Deutsche 0283, ECF No. 87-2).  An

23 HOA commences foreclosure proceedings by mailing a notice of delinquent assessments to the

24 unit being foreclosed upon and the unit's owner; there is no requirement that the notice be

25 recorded. NRS 116.31162(1)(a).  The common assessments became due less than three years

before HOA mailed the notice. (*See* Nov. 18, 2009 Ledger) (indicating that 17 months of common assessments were due by the date of the ledger, and, by implication, 15 months' worth were due when HOA mailed the notice of delinquent assessment lien). Accordingly, HOA validly foreclosed on its lien.

### E. NRS Chapter 116 Notice Defect

The Court next considers Plaintiff's allegation that HOA's sale to SFR is void because HOA did not provide statutorily required notice to MERS, Meridias, and Borrower. The Court concludes that the sale is not void because Plaintiff has not met its burden to show that the notice defect prejudiced a party with an interest in the DOT.

Under the Nevada Supreme Court's recent decision in *U.S. Bank v. Resources Group, LLC* ("*Resources Group II*"), an HOA's non-judicial foreclosure sale is void if: (1) the HOA failed to substantially comply with the notice scheme in NRS Chapter 116; (2) a person entitled to notice under NRS Chapter 116 did not receive actual notice of the sale by other means; and (3) the notice deficiency prejudiced a party who held an interest in the property at the time of sale. *See* 444 P.3d 442, 447 (Nev. 2019).

The Court first addresses HOA's compliance with NRS Chapter 116's notice requirements. HOA did not provide statutorily required notices to MERS. The DOT names MERS as its record beneficiary. (DOT, Ex. 2 to Pl.'s MSJ, ECF No. 80-1). Accordingly, as the record beneficiary, MERS was a "person with an interest" in the Property entitled to notice. *See* NRS §§ 116.31168(1); 107.090(1) and (4); 116.21163 (requiring HOA to send notice to each "person with an interest" in the property); *see also U.S. Bank, N.A. v. Renovista Ridge Master Prop. Owners Ass'n*, 352 F. Supp. 3d 1034, 1040–41 (D. Nev. 2018); *Nationstar Mortg., LLC v. Sahara Sunrise Homeowners Ass'n*, No. 2:15-cv-01597-MMD-NJK, 2019 U.S. Dist. LEXIS 42231, 2019 WL 1233705, at *3 (D. Nev. Mar. 14, 2019) (explaining notice to MERS is required when it is the record beneficiary of the DOT). Plaintiff provides undisputed

evidence that NAS, on behalf of HOA, failed to send MERS statutorily required notices. (*See* 10-day Letter, Ex. 8 to Pl's, MSJ, ECF No. 79-1) (showing that MERS was not on the 10-day letter); (NAS Dep. 27:15–29:11, Ex. 5 to Pl.'s MSJ, ECF No. 79-1) (explaining that NAS sent notices only to those parties included on the 10-day letter).  Likewise, there is no indication in the record that MERS had actual notice of foreclosure.

Second, with respect to Meridias and Borrower, the Court finds that NAS did not substantially comply with NRS Chapter 116 by mailing notices that were returned as undeliverable.[2]  In the context of NRS 116 foreclosure notices, substantial compliance requires that the party entitled to notice receive actual notice of the sale. *See Resources Group II*, 444 P.3d at 447–48; *see also Saticoy Bay v. Nev. Ass'n Servs.*, 444 P.3d 428, 435 (Nev. 2019) ("Substantial compliance requires that a party (1) have actual knowledge, and (2) not suffer prejudice."); *see, e.g.*, *Bank of N.Y. Mellon v. Terra Bella Owners Ass'n*, No. 2:16-cv-00549-APG-NJK, 2019 U.S. Dist. LEXIS 210054, 2019 WL 6529036, at *5 (D. Nev. Dec. 4, 2019). Here, the notices sent to Meridias and Borrower were returned as undeliverable, and there is no evidence they received actual notice of the sale prior to its occurrence. (*See* Notice Return Envelopes, Exs. 9, 12, 17 to Pl.'s MSJ, ECF Nos. 79-1–79-2).

The remaining issue for the Court regarding whether the sale is void to the extent it extinguished Plaintiff's DOT is if a party entitled to notice suffered prejudice as a result of the above-described notice deficiencies.  The Court concludes that Plaintiff has failed to meet its burden to establish that any party with an interest in the Property suffered prejudice as a result

---

[2] Relatedly, Plaintiff also argues that HOA violated its due process rights by providing inadequate notices. (Pl.'s MSJ 11:15–12:10).  In the foreclosure context, the Nevada Supreme Court has held that the notice scheme of NRS Chapter 116 is constitutional and does not violate due process. *See SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).  Accordingly, because the Nevada Supreme Court held that foreclosure under the statutory scheme does not offend due process, the question for the Court is whether HOA's sale of the Property is void or voidable based on HOA's incomplete compliance with NRS Chapter 116.  *Cf. Bank of N.Y. Mellon v. Terra Bella Owners Ass'n*, No. 2:16-cv-00549-APG-NJK, 2019 U.S. Dist. LEXIS 210054, 2019 WL 6529036, at *5 (D. Nev. Dec. 4, 2019) (denying as-applied due process challenge because sending defective notices by first class mail in compliance with NRS 116 satisfied due process).

of the notice defect because Plaintiff has provided no evidence that Borrower, Meridias, or MERS would have acted to preserve the DOT if it had received notice. *See Resources Group II*, 444 P.3d at 447 (explaining that prejudice may exist when a party shows that it would have paid off the HOA's superpriority lien if it had received the NRS Chapter 116 notices).

### F.  *Shadow Canyon*

The Court next considers whether the sale is voidable under *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641 (Nev. 2017) ("*Shadow Canyon*"). A sale is voidable when it "was affected by some element of fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at 646 (Nev. 2017).  Notably, a voidable sale, in contrast to a void sale, cannot defeat the competing title of a bona fide purchaser for value. *Resources Group II*, 444 P.3d at 448; *see also Shadow Wood Homeowners Ass'n v. New York Cmty. Bancorp. Inc.*, 366 P.3d 1105, 1114–16 (Nev. 2016).

Here, even if the Court finds that the Property sold for a grossly inadequate price, Plaintiff cannot establish that the sale was affected by fraud, unfairness, or oppression.  Plaintiff argues that HOA failing to send notices to MERS or notices that were received by Borrower and HOA satisfy the requisite showing of unfairness. (*See* Pl.'s MSJ 14:17–16:2). The Nevada Supreme Court has held that as long as notices are mailed to all parties with an interest in the property, the sale should not be set aside in equity even if the notices are not received. [3] *See PNC Bank, Nat. Assoc. v. Saticoy Bay LLC Series 9320 Mt. Cash. Ave. UT 103*, 395 P.3d 511 (Table), 2017 Nev. Unpub. LEXIS 395, 2017 WL 2334492 (Nev. May 25, 2017) (unpublished) ("Here, we disagree that appellant has identified an element of fraud, unfairness, or oppression. Although appellant contends that unfairness exists because its predecessor did not receive the

---

[3] Plaintiff, citing *Diakonos Holdings, LLC v. Nationstar Mortg., LLC*, 443 P.3d 1126 (Table), 2019 Nev. Unpub. LEXIS 779, 2019 WL 3034856 (Nev. July 10, 2019) (unpublished), argues that HOA had a duty of reasonable inquiry to ensure that the notices were being delivered.  The Court finds that Plaintiff's contention is unsupported.  Rather, the Nevada Supreme Court recognized a narrow duty of reasonable inquiry to locate a DOT borrower's successor in interest when the HOA knew the original borrower was deceased. *Id.* at *1.

notice of sale, the pertinent statutes require only that the notice be mailed, not received."); *see also RLP-Ampus Place, LLC v. U.S. Bank, N.A.* ("*RLP-Ampus*"), 408 P.3d 557 (Table), 2017 Nev. Unpub. LEXIS 1174, 2017 WL 6597148 (Nev. Dec. 22, 2017) (unpublished) (setting aside sale because notices were neither mailed to the bank nor received at the address of the property).  Plaintiff has not established that HOA's failure to send notice to MERS constitutes unfairness effecting the sale by resulting in, for example, chilled bidding. *See Bank of N.Y. Mellon v. Pomeroy*, No. 2:17-cv-00939-RFB-NJK, 2019 U.S. Dist. LEXIS 54981, 2019 WL 1429612, at *5 n.6 (Mar. 30, 2019) ("The Court also rejects Plaintiff's argument that mere failure to send a notice to MERS, even if was [sic] a beneficiary required to receive notice, would somehow render the sale void or voidable as a matter of law.  Plaintiff has cited to no Nevada caselaw interpreting NRS Chapter 116 to have such a strict requirement or harsh penalty as it relates to notice."); *cf. RLP-Ampus*, 2017 WL 6597148, at *1 (explaining that a sale may be voidable if notices are not sent to the borrower and lender because they are the parties most motivated to stop foreclosure); *see also Mortg. Elec. Reg. Sys. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 785 (Neb. 2005) (explaining MERS's role in the mortgage services industry).  Accordingly, Plaintiff's allegations of unfairness do not support setting aside the sale in equity.

### G.    Plaintiff's Contract Claims against HOA

HOA requests summary judgment on Plaintiff's breach of contract claim arguing the claim is not actionable because HOA's CC&Rs do not constitute contractual provisions. (HOA's MSJ 6:6–23, 7:5–28, ECF No. 77).  HOA continues that even if the Court were to construe its CC&Rs as a valid contract, the CC&Rs do not contain any language providing that lenders are intended beneficiaries. (*Id.* 6:24–7:4).  Plaintiff counters that it is a third-party beneficiary under HOA's CC&Rs because the CC&Rs evince an intent to benefit mortgage

1  lenders. (Pl.'s Resp. to HOA's MSJ 16:15–18:5, ECF No. 85).  Plaintiff asserts that the

2  CC&R's notice provision shows HOA's intent to benefit lenders' assignees. (*Id.* 17:19–22).

3      In *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) (superseded in

4  part on other grounds), the Nevada Supreme Court expressly held that Chapter 116's

5  "provisions may not be varied by agreement, and rights conferred by it may not be waived . . .

6  [e]xcept as expressly provided" in Chapter 116. *See id.* at 419; *see also RLP-Vervain Court,*

7  *LLC v. Wells Fargo*, No. 65255, 2014 Nev. Unpub. Lexis 2045, 2014 WL 6889625, at *1 (Nev.

8  Dec. 5, 2014) (unpublished).  Because "[n]othing in [NRS] 116.3116 expressly provides for a

9  waiver of the HOA's right to a priority position for the HOA's super priority lien," a mortgage

10  protection clause does not impact NRS 116.3116(2)'s application to cases concerning a

11  homeowners association's non-judicial foreclosure. *SFR Invs. Pool 1*, 334 P.3d at 419.

12      Here, Plaintiff premises its breach of contract and implied covenant of good faith claims

13  on language in HOA's CC&Rs stating that a foreclosure sale would not extinguish a first

14  position Deed of Trust and that title to the Property is sold subject to that Deed of Trust. (Pl.'s

15  Resp. to HOA's MSJ 16:17–19:13, ECF No. 85).  It further asserts it is entitled to raise its

16  contract claims as a third-party beneficiary of the CC&Rs. (*Id.*).

17      In light of the Nevada Supreme Court's pronouncements that Chapter 116's provisions

18  are nonwaivable, courts in this District have held that claims for breach of contract may not

19  arise from mortgagee protection clauses in an HOA's CC&Rs. *See Bank of Am., N.A. v.*

20  *Operture, Inc.*, No. 2:16-cv-01692-APG-GWF, 2018 U.S. Dist. LEXIS 111446, 2018 WL

21  3242679, at *5–6 (D. Nev. July 2, 2018) (dismissing plaintiff's claims for misrepresentation

22  and breach of contract on the basis that "an HOA cannot waive its right to a superpriority

23  lien."); *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1 LLC*, No. 2:16-cv-2110-JCM-VCF,

24  2018 U.S. Dist. LEXIS 31106, 2018 WL 1077280, at *6 (D. Nev. Feb. 26, 2018) (rejecting

25  plaintiff's claim centered upon "misrepresentations contained in the CC&Rs" and noting that

1  "[l]anguage in the CC&Rs has no impact on the superpriority lien rights granted by NRS 116.")

2  (citing *SFR Invs. Pool 1, LLC*, 224 P.3d at 418–19); *Christiana Trust v. Hollywood Ranch*

3  *Homeowners Ass'n*, No. 2:17-cv-2441-JCM-NJK, 2018 U.S. Dist. LEXIS 161770, 2018 WL

4  4550393, at *5 (D. Nev. Sept. 21, 2018) (finding that the "Nevada Supreme Court has held that

5  NRS 116.3116 defeats" plaintiff's breach of contract claim premised upon a "breach of HOA's

6  CC&Rs."). Accordingly, the Court finds that Plaintiff's breach of contract and breach of

7  implied covenant of good faith and fair dealing[4] claims fail as a matter of law.

8      **H.   Default**

9      SFR moves for default judgment against Borrower, requesting declaratory relief with

10  respect to its crossclaims. SFR has initiated the two-step process required under Rule 55 by

11  moving for clerk's entry of default against Borrower, which the Clerk subsequently entered.

12  (*See* Mot. Clerk's Entry Default and Clerk's Default, ECF Nos. 32, 34). In accordance with

13  Rule 55(b), SFR brings the present Motion. (*See* Mot. Default J., ECF No. 78).

14      Upon reviewing the documents and pleadings on file in this matter, the Court finds that

15  the *Eitel* factors support entry of default judgment in favor of SFR and against Borrower. The

16  first *Eitel* factor weighs in favor of default judgment. A defendant's failure to respond or

17  otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits,"

18  and therefore satisfies the first factor. *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No.

19  2:17-cv-03056-GMN-PAL, 2019 U.S. Dist. LEXIS 33632, 2019 WL 1027990, at *2 (D. Nev.

20  Mar. 4, 2019); *ME2 Prods.*, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *1; *see also*

21  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal 2002) ("If Plaintiffs'

22

---

23  [4] To state a claim for breach of the implied covenant of good faith and fair dealing, Plaintiff must show: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing

24  by acting in a manner unfaithful to the purpose of the contract; and (3) that the plaintiff's justified expectations under the contract were thereby denied. Perry v. Jordan, 111 Nev. 943, 900 P.2d 335, 338 (Nev. 1995). Here,

25  because the Court concludes there is no contract between HOA and Plaintiff, Plaintiff cannot satisfy the first element of the claim. *See, e.g.*, *U.S. Bank Trust, N.A. v. Fodor Family Trust*, No. 2:18-cv-00077-GMN-GWN, 2019 WL 1446962, at *4 (D. Nev. Mar. 31, 2019).

1    motion for default judgment is not granted, Plaintiffs will likely be without other recourse for
2    recovery.").

3         Regarding the second and third *Eitel* factors, the Court finds SFR's crossclaims for quiet
4    title, which request declaratory relief, are sufficiently pleaded and meritorious as to Borrower.
5    "A plea to quiet title does not require any particular elements, but 'each party must plead and
6    prove his or her own claim to the property in question' and a 'plaintiff's right to relief therefore
7    depends on superiority of title.'" *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 129 Nev. 314, 302
8    P.3d 1103, 1106 (Nev. 2013) (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992)).

9         SFR alleges that to the extent Borrower purports to claim an interest in the Property,
10   SFR's purchase of the same extinguished Borrower's interests by operation of NRS Chapter
11   116. (*See* SFR's Answer 16:15–17:6, ECF No. 38).  SFR's claim for declaratory relief is
12   sufficiently meritorious because SFR has introduced evidence that it purchased the Property at
13   the foreclosure sale after HOA validly foreclosed on the superpriority portion of its lien. (Chris
14   Hardin Aff. ¶¶ 5–8, Ex. 1 to Mot. Default J., ECF No. 78-1); (NRS Chapter 116 Notices, Ex. 1-
15   B–1-D to Mot. Default J., ECF Nos. 78-3–78–5); (Foreclosure Deed, Ex. 1-E to Mot. Default
16   J., ECF No. 78-6).  Additionally, there is no dispute regarding Plaintiff's failure to take any
17   steps to preserve its DOT. (*See* Pl.'s MSJ 6:19–18:19).  Accordingly, SFR has shown that it
18   would likely be meritorious against any attempt by Borrower to assert title to the Property.

19        The fourth factor weighs in favor of default judgment because SFR seeks only
20   declaratory relief and no monetary damages against Borrower. (SFR's Answer 16:15–17:6).
21   The fifth *Eitel* factor, which concerns the possibility of dispute regarding material facts, favors
22   SFR.  Courts have recognized that, "[o]nce the clerk enters a default, the well-pleaded factual
23   allegations of the [moving party's] complaint are taken as true, except for those allegations
24   relating to damages." *ME2 Prods.*, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *2
25   (quoting *O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 U.S. Dist. LEXIS

101941, 2010 WL 3636171, at *4 (D. Nev. Sept. 9, 2010)).  Taking SFR's Cross-Complaint's allegations as true, Borrower's interest in the Property was extinguished upon SFR's purchase at the foreclosure sale. (SFR's Answer 13:1–17:6).

With respect to the sixth *Eitel* factor, the Court finds that Borrower's failure to appear was not the result of excusable neglect.  Borrower was served on September 23, 2018, and his answer was due on October 14, 2018. (*See* Summons Returned Executed, ECF No. 48).  The Clerk of Court entered default against Borrower on October 18, 2018. (*See* Clerk's Default, ECF No. 51).  SFR filed its present Motion on June 14, 2019. (*See* Mot. Default J., ECF No. 78).  Borrower's failure to appear or otherwise file anything with respect to this action during the time period counsels against finding excusable neglect.  *ME2 Prods.*, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *3; *O'Brien*, 2010 U.S. Dist. LEXIS 101941, 2010 WL 3636171, at *6.

The seventh and final *Eitel* factor concerns public policy considerations.  While public policy generally favors disposition on the merits, the Court concludes that default judgment is appropriate in light of the other *Eitel* factors.

//
//
//
//
//
//
//
//
//
//

IV.     **CONCLUSION**

        **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 79), is **DENIED**.

        **IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 81), is **GRANTED**.

        **IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 77), is **GRANTED**.

        **IT IS FURTHER ORDERED** that SFR's Motion for Default Judgment, (ECF No. 78), is **GRANTED**.

        The Clerk of Court shall close the case and enter judgment accordingly.

        **DATED** this __11__ day of May, 2020.


                                    _____
                                    Gloria M. Navarro, District Judge
                                    United States District Court